```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

```
_____
                              )
DAVID M. LINEHAN,             )
                              )
         Plaintiff,           )
                              )
v.                            )        Civil Action
                              )        No. 17-cv-10433-PBS
NANCY A. BERRYHILL,           )
Commissioner of Social        )
Security Administration,      )
                              )
         Defendant.           )
_____)
```

**MEMORANDUM AND ORDER**

January 27, 2018

Saris, C.J.

**INTRODUCTION**

Plaintiff David M. Linehan, who suffers from physical and mental impairments, moves to reverse and remand the Commissioner's denial of his application for Social Security Disability Insurance Benefits under 42 U.S.C. § 405(g). He claims that the Administrative Law Judge ("ALJ") committed an error of law by ignoring evidence from his treating healthcare providers.

For the reasons set forth below, the Court **DENIES** Defendant's Motion to Affirm (Docket No. 24) and **ALLOWS**, in part, Plaintiff's Motion to Reverse (Docket No. 22).

1

**FACTUAL BACKGROUND**

The following facts are derived from the administrative record. Plaintiff is a 50-year-old male with a high school education, residing with his girlfriend and their two young children in Quincy, Massachusetts. R. 62, 179-80.

The impairments that support the disability claim stem from a series of incidents in 2012 and 2013. R. 280. First, Plaintiff hit his head while moving a futon in September 2012, resulting in severe neck pain. R. 280. Then, on November 6, 2012, he was involved in a low-speed motor vehicle accident, briefly losing consciousness. R. 402. His dizziness, fatigue, and cognitive difficulties have since been treated as post-concussion symptoms. R. 280-81.

In February 2013, after forcefully shaking a bottle of infant formula, he sought medical treatment for severe pain in his neck and arm. Id. On May 2, 2013, he was involved in a second motor vehicle accident, which he described as a "minor fender bender." Id. His Alleged Onset Date of disability is May 5, 2013. R. 53.

**A. Work History**

Plaintiff last worked a full-time job in 2007. R. 145-46. After a period of unemployment, Plaintiff began to work part-

time as a driver for Enterprise Rental Car in 2010. R. 145. Plaintiff stopped working some time after the November 2012 car accident. He then attempted to return to work on an incremental basis, beginning with a two hour shift in May 2013. R. 402. Due to fatigue, dizziness, and the inability to concentrate, he felt that he was unable to perform his duties as a driver and left Enterprise later that year. Id.

Beginning in March 2014 and continuing through the time of the hearing before the ALJ on November 3, 2015, Plaintiff was working on a *per diem* basis as a courier for White House Insurance, two to three half days per week on average. R. 35-36. Due to his symptoms, Plaintiff has refused offers of additional work. R. 45.

**B. Medical Records**

Plaintiff initially reported "dizziness and fatigue" to a doctor on the day after the automobile accident in November 2012. R. 440. During his visit to Massachusetts General Hospital on the day of the February 16, 2013 bottle shaking incident, the attending physician noted that his "neurological exam show[ed] no focal defects" and that his motor function was "intact." R. 324. Later that month, Dr. Leonid Shinchuk treated him for neck and arm pain but noted that "[h]e is independent with activities of daily living . . . [and] [h]e demonstrates good attention and

3

concentration . . . ." R. 318. Also in February 2013, Dr. Seth Herman, M.D., a traumatic brain injury and neurological rehabilitation specialist, began to see Plaintiff regularly. R. 606.

On May 2, 2013, after the second automobile accident, Plaintiff again showed no neurological defects on examination. R. 300. One week later, Plaintiff reported some lingering absentmindedness to his physical therapist, Marie Figueroa, but stated that his dizziness had abated. R. 293. Later that month, Dr. Herman noted that Plaintiff was recovering well from a "mild concussion," despite lingering memory problems. R. 400.

In August 2013, Dr. Herman noted Plaintiff's persistent dizziness and suggested that he find a different job, as driving appeared to aggravate his dizzy spells. R. 398. In November, Dr. Herman wrote a letter expressing his opinion that "[a]t this point [Plaintiff] is not able to return to his job of driving given the dizziness." R. 606.

During a December 5, 2013 visit with Dr. Herman, Plaintiff complained not only of dizziness, but also of memory loss, fatigue, irritability and other cognitive difficulties. R. 396. However, Plaintiff scored 5/5 on immediate and delayed memory tests at this visit. Id. Dr. Herman prescribed a medication

4

intended to address these cognitive issues, though by June 2014 Plaintiff had shown "no benefit." R. 549.

In June 2014, Dr. Shannon Murray, Psy.D. conducted a psychological evaluation of Plaintiff. R. 539-45. He scored well on visual search speed, processing speed, attention, concentration, cognitive flexibility, and long term memory. R. 541-44. He scored below average on short term memory. R. 544. In July, Plaintiff scored "mildly to moderately impaired" on a memory test at Braintree Rehabilitation Hospital. R. 554-55.

Also in June 2014, a non-examining State agency psychologist found that Plaintiff's impairments were not severe, having only a mild impact on his daily activities. R. 57-59.

That same month, Dr. Herman prescribed Plaintiff with Celexa, to treat symptoms of depression. R. 549. Due to undesirable side effects, Plaintiff was switched to Wellbutrin in September and taken off anti-depressants altogether by December 2014. R. 598, 600.

In June 2015, Dr. Herman referred Plaintiff to Dr. Sarah Gray, Psy.D. for cognitive behavioral therapy (CBT). R. 594. Dr. Gray diagnosed Plaintiff with "major depressive disorder." R. 595. She noted his self-reported stress, fatigue, and cognitive difficulties, and recommended CBT techniques, which he repeatedly failed to complete. R. 564-96. Plaintiff had ten

5

sessions with Dr. Gray from June through September 2015. Id. In July, he also met with Dr. James Mojica for a sleep study. R. 580. Dr. Mojica noted that he suffered from chronic insomnia and recommended that he continue taking melatonin, as prescribed by Dr. Herman. Id.

Also in July 2015, Plaintiff had a session with speech pathologist Robert Sanders, MS, in which he scored very well on information processing speed and attention tests. R. 577. Plaintiff reported to Mr. Sanders that he had been exercising at the gym, going for walks, and shopping. R. 586.

By contrast, in October of that year, Dr. Herman noted that Plaintiff was "not able to work full-time due to" ongoing issues with attention and fatigue. R. 559. He assessed Plaintiff as "markedly limited" in a wide range of activities, including his ability to understand short, simple instructions and his ability to use public transportation. R. 603-04. He was, however, working three days a week in the courier position for White House Insurance at this time, both driving and taking public transportation to do so. R. 559.

On the same day that Dr. Herman assessed that Plaintiff was unable to work due to marked cognitive limitations, Plaintiff had a session with Mr. Sanders. R. 561. He arrived "in good spirits [and] [u]naccompanied" and scored perfectly on three

6

puzzles designed to test his attention, deductive reasoning, and ability to follow instructions. Id.

## **PROCEDURAL BACKGROUND**

Plaintiff first filed his application for Social Security Disability Insurance Benefits on January 15, 2014, claiming disability beginning May 5, 2013. R. 13. The claim was denied on June 19, 2014, and again upon reconsideration on September 11, 2014. R. 81, 85. A hearing was then held on November 3, 2015, with ALJ Constance D. Carter presiding. R. 12-13.

On December 1, 2015, the ALJ issued her decision, which again denied Plaintiff's disability claim. R. 23. At step one of the five step disability evaluation process, the ALJ found that Plaintiff's *per diem* work as a courier at the time of the hearing did not qualify as substantial gainful activity. R. 15. At step two, she found that both Plaintiff's degenerative disc disease and his post-concussion symptoms constituted severe impairments. R. 15-20. At step three, she found that none of Plaintiff's impairments, alone or in combination, met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20.

Therefore, the ALJ proceeded to determine Plaintiff's RFC. R. 20-22. First, she found that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms." R. 21.

7

However, the ALJ found Plaintiff's characterization of the intensity, persistence, and limiting effects of his symptoms to be overstated. R. 21-22. The ALJ found the following RFC for Plaintiff:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds, he could occasionally balance, stoop, kneel, crouch or crawl, he could occasionally bilaterally reach overhead, he could perform work limited to simple routine and repetitive tasks with only occasional decision making and changes in the work setting. R. 20.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 22. At step five, the ALJ found that Plaintiff's age, education, work experience, and RFC made him capable of performing jobs that exist in significant numbers in the national economy. R. 22-23. Plaintiff was found to be not disabled, and his claim was denied. R. 23.

Plaintiff made a timely request for review of the ALJ's decision to the Appeals Council of the Social Security Administration. R. 9. The request was denied on January 10, 2017, making the ALJ's decision the final decision of the Commissioner as to Plaintiff's claim. R. 1.

The entire case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**STANDARD**

**A. Statutory and Regulatory Framework**

Under the Social Security Act, 42 U.S.C. § 405(g), a claimant seeking benefits must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant "must have a severe impairment(s) that makes [him] unable to do [his] past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a).

The Commissioner uses a five-step sequential evaluation process to assess a claim for disability benefits. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). See also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). The evaluation will end at any step in the process if it is determined that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The steps are as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the claimant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted; 4) if the applicant's residual functional capacity ["RFC"] is such that he or she can still perform past relevant work, the

application is denied; and 5) if the applicant, given his or her [RFC], education, work experience, and age, is unable to do any other work, the application is granted."

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). His "impairment(s) . . . may cause physical and mental limitations that affect what [he] can do in a work setting." Id. He can adjust to other work if he can do any job that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1).

The claimant bears the burden of proof for steps one through four. However, the government bears the burden of proof at step five to present evidence of specific jobs that the applicant can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

**B. Standard of Review**

The Commissioner's final decision may only be set aside by the District Court if it resulted from legal error or if the factual findings were not supported by substantial evidence. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing for legal error, "[f]ailure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to

determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)). Where application of the correct legal standard could lead to a different conclusion, the agency's decision must be remanded. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). However, remand is not necessary if it "will amount to no more than an empty exercise." Id. (quoting Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999)).

## **DISCUSSION**

Plaintiff's primary contention is that the ALJ committed an error of law by failing to review the evidence regarding his treatment by Dr. Sarah Gray and Dr. James Mojica. Docket No. 23 at 4. The ALJ's December 1, 2015 decision omits any reference to Gray and Mojica. R. 13-25.

The applicable regulations require the ALJ to address the opinion of any treating medical source. 20 C.F.R. § 404.1527(c)(2). An ALJ must "always give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." Id. A treating source is a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has, or

11

has had, an ongoing treatment relationship with [the claimant]." Id. at § 404.1527(a)(2). An ongoing treatment relationship exists where a claimant visits the treating source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition." Id.

Dr. Gray is a treating source who saw Plaintiff ten times from June through August 2015. R. 564-96. These visits occurred almost every week. Id. Weekly visits are of "a frequency consistent with accepted medical practice" for the treatment of depression. 20 C.F.R. § 404.1527(a)(2). The ALJ committed an error of law when she failed to provide any discussion of the weight that she assigned to Dr. Gray's opinion as to the nature and limiting effects of Plaintiff's depression and other cognitive impairments. Id. at § 404.1527(c)(2). The Court need not address whether Dr. Mojica also qualifies as a treating source, as the failure to weigh Dr. Gray's opinion warrants remand.

Defendant argues that the ALJ's failure to evaluate Dr. Gray's records was harmless for several reasons. First, it contends that Dr. Gray's opinion is based on Plaintiff's self-reported symptoms, unsubstantiated by any objective findings. J.B. v. Astrue, 738 F. Supp. 2d 260, 264-65 (D. Mass. 2010)

(citing Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) for the proposition that "[an] ALJ may reject [a] treating source's opinion if it is based exclusively on claimant's subjective complaints that have been properly discounted"). Second, Dr. Gray expressed no opinion on Plaintiff's ability to work, and in the government's view, her findings are largely consistent with the RFC determined by the ALJ. Third, Dr. Gray's account of Plaintiff's failure to follow through with prescribed CBT exercises would actually militate *against* his claim for benefits.

While these arguments may have merit, the Commissioner, not the Court, has the obligation to weigh conflicting medical evidence in the record. DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 185 (D. Mass. 2009) ("Drawing factual inferences, making credibility determinations, and resolving conflicts in the evidence are responsibilities of the Commissioner."). It is also conceivable that Dr. Gray's diagnosis of "major depressive disorder," in conjunction with the opinion of the other treating physician Dr. Herman could lead to a finding of disability. On remand, the ALJ must provide good reasons for the weight assigned to the opinion of all treatment providers.

## **ORDER**

The Court **DENIES** Defendant's Motion to Affirm (Docket No. 24), and **ALLOWS IN PART** Plaintiff's Motion to Reverse (Docket No. 22). Pursuant to 42 U.S.C. § 405(g), the Court **VACATES** the Commissioner's decision and **REMANDS** this matter.

                                           /s/ PATTI B. SARIS            .
                                           Hon. Patti B. Saris
                                           Chief U.S. District Judge